UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SCOTT GUIDRY, et al.,<br><br>            Plaintiffs,<br><br>        v.<br><br>GOLDEN GATE NATIONAL PARKS CONSERVANCY, et al.,<br><br>            Defendants. | Case No. 12-cv-05639-JSC<br><br>**ORDER RE:  RULE 35 MENTAL EXAMINATION**<br><br>Re: Dkt. No. 131 |

Plaintiffs Brian Scott Guidry and Peggy Kuykendall bring this action against Defendants Golden Gate National Parks Conservancy and Alcatraz Cruises, LLC, for injuries the Plaintiffs suffered while riding a tram on Alcatraz Island.  Now pending before the Court is the parties' joint statement to resolve a discovery dispute regarding whether the Court should compel Guidry to submit to a psychiatric evaluation, as Defendants request.  (Dkt. Nos. 131, 132.)  Plaintiffs assert that any such evaluation is unreasonably duplicative and harassing given that Guidry has already undergone a separate evaluation by a neuropsychologist who looked into Guidry's emotional state. (Dkt. No. 131 at 5.)  After carefully considering the parties' submissions, and having had the benefit of oral argument on December 4, 2014, the Court GRANTS Defendants' request and compels Guidry to undergo a four-hour psychiatric evaluation.

Federal Rule of Civil Procedure 35(a) gives a court authority to order one party to comply with the other's legitimate discovery request to submit to a mental examination by a licensed examiner.  Fed. R. Civ. P. 35(a).  The party requesting the mental examination must demonstrate that (1) the physical or mental condition of the party is "in controversy" and (2) "good cause" for the examination exists.  *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995).[1]

---

[1] Plaintiff cites cases from California state court and implies that the Court should apply California law given that only state law claims remain.  (*See* Dkt. No. 131 at 7.)  However, "[i]t is axiomatic

"A mental condition is 'in controversy' when it is itself the subject of the litigation." *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. Apr. 5, 2013). "'Good cause' for a mental examination requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case." *Ragge*, 165 F.R.D. at 609.

Rule 35 imposes no limit on the number of examinations, but "[e]ach request for an independent medical examination must turn on its own facts, and the number of examinations to which a party may be subjected depends solely upon the circumstances of the underlying request." *Alhozbur v. McHugh*, No. C09-01576 JW (HRL), 2010 WL 3504724, at *1 (N.D. Cal. Sept. 8, 2010) (quoting *Peters v. Nelson*, 153 F.R.D. 635, 637 (N.D. Iowa 1994)). When the plaintiff has already undergone an initial examination and a party requests a subsequent examination, in determining whether to order the second exam the court considers whether a significant period of time has elapsed since the last evaluation and whether the subsequent examiner provides additional expertise in a different but relevant discipline. *See, e.g.*, *Edson v. Liberty Mut. Ins. Co.*, No. C-01-3128 SBA (EMC), 2002 WL 31946902, at *2 (N.D. Cal. 2002). At bottom, it remains "within the broad discretion of the district court to determine whether a party must submit to examination." *Lester v. Mineta*, No. C 04-03074, 2006 WL 3741949, at *1 (N.D. Cal. Dec. 19, 2006) (citation omitted).

Here, Plaintiffs concede that Guidry's mental condition is "in controversy" for the purposes of Rule 35. *See Tan v. City & Cnty. of San Francisco*, No. C 08-01564 MEJ, 2009 WL 594238, at *1 (N.D. Cal. Mar. 4, 2009) (noting that courts will order plaintiffs to undergo an independent medical examination when the plaintiff concedes that her mental condition is in controversy). Plaintiffs also have conceded that there is good cause for both a neuropsychological and neurological evaluation; Dr. Howard Friedman already has conducted an eight hour neuropsychological examination and produced a 20-page report (*see* Dkt. No. 132-1), and Guidry apparently has consented to undergo a neurological examination to assess the physiological

---

that federal courts follow federal procedural law, regardless of the . . . substantive law at issue[,]" and "discovery is a procedural matter governed by federal law." *Balarezo v. Nth Connect Telecom, Inc.*, No. C 07-5243 JF (PVT), 2008 WL 2705095, at *1 n.3 (N.D. Cal. July 8, 2008).

impacts of his injury (*see* Dkt. No. 136 ¶ 1). Thus, this narrow dispute focuses only on whether a psychiatric evaluation is necessary to evaluate Guidry's emotional status, as Defendants contend.

From Defendants' perspective, the psychiatric evaluation they currently seek is distinct from the neuropsychology examination that Guidry already underwent and is necessary to understand the nature and extent of Plaintiffs' claims for damages. (*Id.* at 2.) In support of their request, Defendants submit a declaration of Bernard S. Rappaport, M.D., the psychiatrist retained to complete Guidry's examination. (Dkt. No. 131-4.) According to Dr. Rappaport, while neuropsychology focuses on "impairment to cognitive function, which involves empirical testing of a patient's behavioral tendencies and intellectual capabilities and limitations[,]" psychiatry explores "changes to a brain injury patient's emotional state as a result of the injury[,]" which includes "examination of the patient's emotional and psychiatric history, and present psychiatric state, treatment, and prognosis[.]" (Dkt. No. 131-4 ¶ 4.) Dr. Rappaport avers that only a psychiatrist can properly examine emotional and psychiatric issues, whereas a psychologist reviews cognitive and behavioral problems, and that common practice in brain injury cases is to have separate evaluations by experts in each field; thus, a psychiatrist is required to review Guidry's emotional state, and that such an evaluation not duplicate any testing that the neuropsychologist already completed. (*Id.* ¶ 5.) Based on Dr. Rappaport's declaration, Defendants contend that there is good cause to order a psychiatric evaluation. (Dkt. No. 131 at 3-4.)

Plaintiffs, for their part, assert that there is no good cause for a psychiatric evaluation because the neuropsychologist already assessed Guidry's emotional status. (Dkt. No. 131 at 5; Dkt. No. 136 at 136.) In support of their opposition to Defendants' request, Plaintiffs submit the declaration of psychiatrist Zachary D. Torry, M.D., who opines that any psychiatric evaluation would be duplicative of Dr. Friedman's completed neuropsychological examination. (Dkt. No. 136 at 3-5.) From Dr. Torry's perspective, the mental anguish that Guidry likely will endure if forced to undergo another evaluation far outweighs its limited, duplicative value. (*Id.* ¶¶ 3-4.) Plaintiffs also expressed concern about Guidry taking more time off from work for the additional examination.

3

Courts in this District regularly find good cause to order plaintiffs seeking damages for brain injuries to undergo all three types of examinations—neuropsychological, neurological, and psychiatric—given the differences between the three fields. *See, e.g.*, *Nicholas v. United Air Lines, Inc.*, No. C09-02089 RS (HRL), 2010 WL 1759459, at *1-2 (N.D. Cal. Apr. 29, 2010); *Ayat v. Societe Air France*, No. C 06-1574 JSW (JL), 2007 WL 1120358, at *6-7 (N.D. Cal. Apr. 16, 2007); *Lester*, 2006 WL 3741949, at *2. So it is here: based on the nature of Guidry's claims, which allege brain injury resulting in physical pain and emotional distress as a result of Defendants' negligence, the Court concludes that Defendants are entitled to compel Guidry to undergo a psychiatric examination separate and apart from evaluations in neuropsychology and neurology. The Court agrees with Defendants that neuropsychology and psychiatry are different disciplines that assess different problems. Thus, although Dr. Friedman's neuropsychological report touched on Guidry's emotional condition in the context of his neuropsychological evaluation—indeed, its very purpose was "to determine current cognitive *and emotional functioning*" regarding Guidry's claim of injury (Dkt. No. 132-1 at 2)—it did so from the perspective of a neuropsychologist looking into Guidry's cognitive state, not a psychiatrist assessing mental illness and medications treating such conditions. As a result, a separate psychiatric examination is appropriate. Finally, Plaintiff's argument that a psychiatric examination is unwarranted given the "mental anguish" that further evaluation is likely to cause Guidry is unavailing; given the scope of damages that Plaintiffs seek—up to five million dollars—an additional four hours of examination is reasonable.

For all of these reasons, the Court GRANTS Defendants' request to compel Guidry to undergo a four-hour independent medical examination by a psychiatrist. As stated on the record at the hearing, the Court directs Defendants to work with Plaintiffs to set the psychiatric examination at a time least inconvenient to Guidry's work schedule.

**IT IS SO ORDERED**.

Dated: December 4, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

4